1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                       NORTHERN DISTRICT OF CALIFORNIA

7

8   REV. CHARLES MAYFIELD, *et al.*,              No. C-07-0583 EMC

9              Plaintiffs,

10        v.                                      **ORDER GRANTING DEFENDANTS'
                                                  MOTION TO DISMISS**
11  CITY OF OAKLAND, *et al.*,
                                                  **(Docket No. 6)**
12             Defendants.
    _____/
13

14

15        Plaintiffs Rev. Charles Mayfield, Rev. Alonzo Emerson, and Rev. Eddie Owens have sued

16  Defendants the City of Oakland, Chief of Police Wayne Tucker, and various other individuals on the

17  executive board of Oakland Police and Chaplains Together ("OPACT"), including the OPACT

18  coordinator Melonie Levine.  The City Defendants -- consisting of the City, Chief Tucker and Ms.

19  Levine -- have filed a motion to dismiss, which the remaining individual defendants have joined.

20  Having considered the parties' briefs and accompanying motions, the Court hereby **GRANTS** the

21  motion to dismiss.

22              **I.    FACTUAL & PROCEDURAL BACKGROUND**

23        In their first amended complaint ("FAC"), Plaintiffs allege as follows.

24        Plaintiffs were all volunteers with the City's Volunteer Police Chaplaincy Program.  *See*

25  FAC ¶ 3.  "They underwent a significant period of training, obtained a substantial number of

26  completed education units ('CEUs') and made personal and financial sacrifice to assume these

27  responsibilities [as volunteers]."  *Id.*  The chaplaincy program is governed by OPACT.  *See id.* ¶ 2.

28  OPACT "is affiliated with the City of Oakland and its police department."  *Id.*

Between 2002 and 2005, Ms. Levine, the OPACT coordinator, harassed Rev. Mayfield and Rev. Emerson by, *e.g.*, refusing to give them chaplaincy identification cards and losing their files. *See id.* ¶ 5.  After Rev. Mayfield and Rev. Emerson complained -- both to public officials and OPACT's board -- the City's Deputy Chief of Police Michael Holland ordered that they be cleared and both reverends received their identification cards.  *See id.*

In retaliation, Ms. Levine and other OPACT board members engaged in a pattern of harassment against Rev. Mayfield and Rev. Emerson.  *See id.* ¶ 6.  For example:

(1)     Neither was allowed to obtain a badge and uniform, "the lack of which hobbled them from being able to effectively conduct their duties." *Id.*

(2)     In or about July 2005, after Rev. Mayfield's identification card was stolen, Ms. Levine refused to give him another one and further refused to endorse him as a chaplain with the International Conference of Police Chaplains ("ICPC"), "which was necessary in order for Rev. Mayfield to become a 'full chaplain' rather than merely as 'associate chaplain.'" *Id.*

(3)     Ms. Levine called all members of the OPACT executive board and "requested that they act in concert with her to remove Rev. Mayfield from the chaplaincy program." *Id.* ¶ 7. Ultimately, on February 9, 2006, Rev. Mayfield was informed by Chief Tucker that, on the recommendation of Ms. Levine and the board, he was being dismissed from the City's chaplaincy program. *See id.*

(4)     In April 2007, Ms. Levine told Rev. Emerson that his records had been lost (for a fourth time) and that he would have to re-obtain fingerprint records, photographs, and other vital records and provide them to OPACT if he wanted to attain "full chaplaincy status and ICPC approval." *Id.* ¶ 11.

On March 11, 2006, approximately a month after being dismissed, Rev. Mayfield filed a complaint with Chief Tucker asking about the basis of his dismissal.  *See id.* ¶ 8.  On April 25, 2006, Rev. Mayfield sent a similar complaint to the Police Department's Internal Affairs.  *See id.*  Rev. Mayfield was never given an explanation nor was he given any process for challenging his dismissal.  *See id.*  On October 20, 2006, Rev. Mayfield filed a tort claim complaining about a lack

**United States District Court**
For the Northern District of California

1  of due process, which was subsequently denied by the City.  *See id.* ¶ 9; *see also* City Defs.' RJN,

2  Ex. B.

3         On December 21, 2006, Rev. Owens was asked (on short notice) to attend an OPACT

4  meeting.  *See* FAC ¶ 10.  (It is not clear whether, at this time, Rev. Owens was a member of the

5  OPACT executive board.  At some point, Rev. Owens resigned from the board.  *See id.* ¶ 7.)  At the

6  meeting, Rev. Owens was asked about the situation with Rev. Mayfield.  *See id.* ¶ 10.  He was also

7  asked about a letter he wrote to the City Administrator's Office, in which he apparently supported

8  Rev. Mayfield in the face of Ms. Levine's opposition.  *See id.*  Ms. Levine told Rev. Owens to turn

9  in his badge and identification card "on the spot."  *Id.*  When Rev. Owens refused, he was asked to

10  sign a document stating that he would not discuss publicly what was said at the meeting.  *See id.*

11  Rev. Owens was told that, if he did not sign the document, he would be dismissed from the City's

12  chaplaincy program.  *See id.*

13         Based on the above, Rev. Mayfield asserts the following claims: (1) "constitutional

14  violations" (both federal and state) against all Defendants, (2) violation of California Civil Code §

15  52.1 against all Defendants except Chief Tucker, and (3) negligence against all Defendants.  Rev.

16  Emerson and Rev. Owens also assert the same claims, and against all Defendants except Chief

17  Tucker.

18                                    **II.   DISCUSSION**

19  A.      Federal Constitutional Claims

20         As noted above, Rev. Mayfield asserts that all Defendants violated his federal constitutional

21  rights, and Rev. Emerson and Rev. Owens contend that all Defendants, except for Chief Tucker,

22  violated their federal constitutional rights.  *See* 42 U.S.C. § 1983.[1]  The federal constitutional right at

23  issue is that of free speech.  More specifically, Plaintiffs argue that they were retaliated against

24

25

26

27         [1] The Court rejects Defendants' contention that Plaintiffs "do not even attempt to allege a Section 1983 claim."  Mot. at 6.  In the FAC, Plaintiffs assert that the Court has jurisdiction pursuant

28  to, *inter alia*, § 1983.  *See* FAC ¶ 1.

United States District Court

For the Northern District of California

1  because of their exercise of their right to free speech.[2] *See, e.g.*, *Hyland v. Wonder*, 972 F.2d 1129

2  (9th Cir. 1992) (concluding that "public officials may not deny or deprive a person of a

3  governmental benefit or privilege on a basis that infringes her or his freedom of speech" and that

4  "the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the

5  deprivation of which can trigger First Amendment scrutiny").

6      1.  <u>State Action</u>

7        Defendants argue that Plaintiffs have failed to state a claim for relief under § 1983 because

8  they have not alleged that Defendants are state actors. *See* 42 U.S.C. § 1983 (providing that "[e]very

9  person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ,

10  subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

11  rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

12  injured in an action at law, suit in equity, or other proper proceeding for redress"); *see also*

13  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (noting that, "'[i]n cases under § 1983, "under

14  color" of law has consistently been treated as the same thing as the "state action" required under the

15  Fourteenth Amendment'"). This is not entirely true. The City is clearly a state actor, as is Chief

16  Tucker. Rev. Mayfield has asserted claims against both the City and Chief Tucker; Rev. Emerson

17  and Rev. Owens have asserted claims against the City.

18        However, the Court agrees with Defendants that Plaintiffs have not adequately alleged that

19  any of the OPACT board members, including Ms. Levine, are state actors. There is no allegation in

20  the FAC that OPACT is a City agency. According to the FAC, OPACT is "affiliated with the City

21  of Oakland and its police department,"[3] *id.*, but that allegation, even if true, is not enough to

22  establish that Ms. Levine or the other OPACT board members are state actors who can be held liable

23  for a § 1983 violation. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961) (stating that "[m]isuse of

24  

25        [2] In the opposition to the motion to dismiss, Rev. Mayfield claims that "presently" there is no

26  cause of action for violation of procedural due process; "[r]etaliation is at the root of what happened to
    him." Opp'n at 2.

27        [3] Based on evidence submitted by the City Defendants in conjunction with a request for judicial

28  notice, OPACT appears to be a nonprofit religious corporation (albeit one established, in essence, for
    the benefit of the City). *See* City Defs.' RJN, Ex. A.

United States District Court

For the Northern District of California

1  power, possessed by virtue of state law and made possible only because the wrongdoer is clothed

2  with the authority of state law, is action taken 'under color of state law'").

3      Admittedly, a private actor can still be held liable for a § 1983 violation under certain

4  circumstances.  Under Ninth Circuit law,

5          [a] private individual's action may be "under color of state law" where
           there is "significant" state involvement in the action.  The Supreme
6          Court has articulated four tests for determining whether a private
           individual's actions amount to state action: (1) the public function test;
7          (2) the joint action test; (3) the state compulsion test; and (4) the
           governmental nexus test.
8

9  *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002).  However, based on the allegations in the

10  FAC, none of the tests are applicable.  For example, none of the Plaintiffs has alleged that the

11  OPACT board members acted in concert with the City or Chief Tucker to deprive them of their

12  constitutional rights.  *See id.* at 445 ("Under the joint action test, 'courts examine whether state

13  officials and private parties have acted in concert in effecting a particular deprivation of

14  constitutional rights.'").  Nor, for instance, has Rev. Mayfield alleged that his dismissal from the

15  chaplaincy program required the City or Chief Tucker's involvement.  *See id.* (stating that, under the

16  joint action test, the issue is "whether the state has so far insinuated itself into a position of

17  interdependence with [the private actor] that it must be recognized as a joint participant in the

18  challenged activity") (internal quotation marks omitted).[4]

19      Accordingly, the Court holds that all Plaintiffs have failed to allege a § 1983 claim against

20  the OPACT board members, including Ms. Levine.  There are insufficient allegations that the

21  OPACT board members are state actors or are private actors who actions were taken under color of

22  state law.

23

24  _____

25      [4] Counsel for Rev. Mayfield did attach to his declaration a document provided to him by his
    clients, which appears to be a Departmental General Order of the Oakland Police establishing or
26  governing aspects of OPACT.  *See* Simpich Decl., Ex. 1.  However, the Court sustains Defendants'
    objection to the document, not only because it is hearsay and not authenticated but also because this is
27  only a motion to dismiss.  The Court does not address whether the General Order would be sufficient
    to establish state action on the part of OPACT in this case or, at the very least, raise a genuine dispute
28  of material fact regarding state action.

**United States District Court**
For the Northern District of California

1    In addition, even though the City is a state actor, the Court holds that Rev. Emerson and Rev.

2    Owens have failed to state a § 1983 claim against it because their claims are based solely on the

3    retaliatory acts of Ms. Levine and the other OPACT board members, *i.e.*, not any specific acts of the

4    City.

5         2.     <u>Protected Speech</u>

6         Although Rev. Mayfield has asserted a § 1983 claim against two state actors -- namely, the

7    City and Chief Tucker – the Court concludes that this claim must also be dismissed for failure to

8    state a claim for relief.  Rev. Mayfield's theory seems to be that the City and Chief Tucker caused

9    him harm by dismissing him from the chaplaincy program when the dismissal -- as recommended by

10   Ms. Levine and the OPACT board -- was essentially retaliation for Rev. Mayfield's exercising his

11   First Amendment rights.

12        The Supreme Court has stated that there are

13           two inquiries to guide interpretation of the constitutional protections
         accorded to public employee speech.  The first requires determining
14           whether the employee spoke as a citizen on a matter of public concern.
         If the answer is no, the employee has no First Amendment cause of
15           action based on his or her employer's reaction to the speech.  If the
         answer is yes, then the possibility of a First Amendment claim arises.
16           The question becomes whether the relevant government entity had an
         adequate justification for treating the employee differently from any
17           other member of the general public. . . . A government entity has
         broader discretion to restrict speech when it acts in its role as
18           employer, but the restrictions it imposes must be directed at speech
         that has some potential to affect the entity's operations.

19

20   *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006).  Although Rev. Mayfield was a volunteer in the

21   chaplaincy program and not an employee, neither party disputes that the above analysis governing

22   public employee free speech applies, assuming there is state action.

23        In the instant case, Rev. Mayfield has not satisfied the first requirement.  More specifically,

24   there are no allegations in the FAC that Rev. Mayfield was speaking on a matter of public concern.

25   Under Supreme Court case law, a court must "examine the 'content, form, and context of a given

26   statement' in order to determine whether an employee's speech addressed a matter of public

27   concern."  *City of San Diego v. Roe*, 543 U.S. 77, 83 (2004).  "[T]he standard for determining

28   whether expression is of public concern is the same standard used to determine whether a

6

**United States District Court**
For the Northern District of California

1    common-law action for invasion of privacy is present." *Id.*  Invasion of privacy cases such as *Cox*

2    *Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and *Time, Inc. v. Hill*, 385 U.S. 374 (1967),

3    "make clear that public concern is something that is a subject of legitimate news interest; that is, a

4    subject of general interest and of value and concern to the public at the time of publication." *Roe*,

5    543 U.S. 83-84.  The Supreme Court has rejected the presumption that "all matters which transpire

6    within a government office are of public concern," noting instead that,  "[w]hile as a matter of good

7    judgment, public officials should be receptive to constructive criticism offered by their employees,

8    the First Amendment does not require a public office to be run as a roundtable for employee

9    complaints over internal office affairs."  *Connick v. Myers*, 461 U.S. 138, 149 (1983).

10        The FAC reflects that Rev. Mayfield was retaliated against after he complained about Ms.

11   Levine's refusal to give him a chaplaincy identification card and her losing of his file.[5]  *See* FAC ¶¶

12   5-6.  There is nothing about this speech that implicates a public concern; rather, the speech merely

13   involves a complaint over internal office affairs.  The Court finds *Connick* dispositive.

14        In *Connick*, the plaintiff, an assistant district attorney, was informed that she was going to be

15   transferred to prosecute cases in a different section of the criminal court.  *See id.* at 140.  The

16   plaintiff was opposed to the transfer and informed her superiors of such.  When told by one of her

17   supervisors that her concerns were not shared by others in the office, the plaintiff "prepared a

18   questionnaire soliciting the views of her fellow staff members concerning transfer policy, office

19   morale, the need for a grievance committee, the level of confidence in supervisors, and whether

20   employees felt pressured to work in political campaigns." *Id.* at 141.  The plaintiff then distributed

21   _____

22       [5] The FAC also refers to an occasion (no date is specified) on which a wrongful claim was made
     against Rev. Mayfield and states that Rev. Mayfield spoke with "interested parties, including some of
23   the Defendants," and took action to illustrate the wrongfulness of the claim.  FAC ¶ 4.  However, there
     is no clear allegation that Rev. Mayfield was retaliated against for speaking with any of the Defendants
24   about the wrongful claim; nor is there even any allegation about what the nature of the wrongful claim
     was.  In the opposition to the motion to dismiss, Rev. Mayfield states that the wrongful claim was "an
25   outrageous claim made by a woman alleging sexual misconduct," Opp'n at 2, but, on a motion to
     dismiss, the Court considers only the complaint and matters which may be judicially noticed.  *See* 2-12
26   Moore's Fed. Prac. -- Civ. § 12.34[2] ("In deciding whether to dismiss, the court may consider only the
     facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the
27   pleadings, and matters of which the judge may take judicial notice.").  In any event, the FAC does not
     allege the retaliation was for any exercise of Rev. Mayfield's free speech in connection with this
28   wrongful claim.

the questionnaire to fifteen assistant district attorneys.  *See id.*  After the plaintiff's supervisors learned about the distribution of the questionnaire, she was terminated.  The plaintiff was told that she was being terminated because of her refusal to accept the transfer and that her distribution of the questionnaire was an act of insubordination.  *See id.*

The Supreme Court held that,

> with but one exception, the questions posed by [the plaintiff] to her co-workers do not fall under the rubric of matters of "public concern." We view the questions pertaining to the confidence and trust that Myers' co-workers possess in various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of [the plaintiff's] dispute over her transfer to another section of the criminal court.  Unlike the dissent, we do not believe these questions are of public import in evaluating the performance of the District Attorney as an elected official.  [The plaintiff] did not seek to inform the public that the District Attorney's Office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases.  Nor did [the plaintiff] seek to bring to light actual or potential wrongdoing or breach of public trust on the part of [the supervisor] and others.  Indeed, the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo.  While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of [the plaintiff's] questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors.

*Id.* at 148.

In the instant case, Rev. Mayfield's situation is materially indistinguishable from that of the plaintiff in *Connick*.  Rev. Mayfield's complaints about Ms. Levine's refusal to give him a chaplaincy identification card and her losing of his file are not of public import in evaluating the performance of OPACT, let alone the performance of Chief Tucker as a government official.  The matters complained of were not a "subject of general interest and of value and concern to the public."  *Roe, supra*, 543 U.S. at 83-84.

At the hearing, Rev. Mayfield suggested that a public concern was implicated by his speech because of the importance of the job that he was performing as a chaplain -- providing a service both to the City police officers and to the members of the public that interact with the officers.  But this argument is not persuasive since no court has held that the speaker's job dictates whether his speech

United States District Court
For the Northern District of California

1    is a matter of public concern.  Certainly the job of an assistant district attorney is an important one;

2    yet *Connick* found no First Amendment protection.

3        Accordingly, the Court concludes that Rev. Mayfield has failed to state a claim for relief

4    under § 1983, both with respect to the City and to Chief Tucker.

5    B.     <u>State Constitutional Claims</u>

6        Plaintiffs argue retaliation in violation of their rights under the state constitution as well as

7    the federal constitution.  The California Constitution provides that "[e]very person may freely speak,

8    write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.

9    A law may not restrain or abridge liberty of speech or press."  Cal. Const., art. I, § 2.

10        The problem for Plaintiffs is, once again, a failure to allege that they engaged in any speech

11    that touched upon a matter of public concern.  In *Cal. Teachers Ass'n v. Governing Bd.*, 45 Cal.

12    App. 4th 1383, 1387 (1996), the court stated that, in evaluating public employee speech under the

13    state constitution, "we must strike a balance between the interests of the [public employee], as a

14    citizen, in commenting upon matters of public concern and the interest of the State, as an employer,

15    in promoting the efficiency of the public services it performs through its employees" (internal

16    quotation marks omitted).  Significantly, the court cited *Pickering v. Board of Educ.*, 391 U.S. 563,

17    568 (1968) which established the basic analytical framework upon which *Connick* is based.  It

18    appears that the California courts apply the same analysis to public employee speech under the

19    California constitution as the federal courts have applied under the First Amendment.  Plaintiffs cite

20    no authority to the contrary.  Rev. Mayfield and Rev. Emerson have only alleged that they

21    complained about Ms. Levine's refusal to give them chaplaincy identification cards and losing their

22    files.  *See* FAC ¶ 5.  Rev. Owens has only alleged that he wrote a letter to the City Administrator's

23    Office, in which he apparently supported Rev. Mayfield in the face of Ms. Levine's opposition.  *See*

24    *id.* ¶ 10.  These expressive activities do not rise to the level of public concern sufficient to invoke

25    constitutional protection.

26        Accordingly, all Plaintiffs' claims pursuant to the state constitution are dismissed for failure

27    to state a claim for relief.

28

C.      California Civil Code § 52.1

Under California Civil Code § 52.1,

> [a]ny individual whose exercise or enjoyment of rights secured by the
> Constitution or laws of the United States, or of rights secured by the
> Constitution or laws of this state, has been interfered with, or
> attempted to be interfered with, as described in subdivision (a) [*i.e.*, by
> threat, intimidation, or coercion], may institute and prosecute in his or
> her own name and on his or her own behalf a civil action . . . .

Cal. Civ. Code § 52.1(b); *see also Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860,

883 (2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means

(*i.e.*, 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he

or she had the right to do under the law or to force the plaintiff to do something that he or she was

not required to do under the law.").  Plaintiffs claim violations of § 52.1 based once again on a

retaliation theory.

Although a § 52.1 claim can be raised in the employment context, *see Stamps v. Superior*

*Court*, 136 Cal. App. 4th 1441, 1457 (2006) (rejecting the argument that an employment case could

not be founded on § 52.1), the claim requires that there be a threat, intimidation, or coercion.  In the

instant case, Plaintiffs have failed to plead claims under § 52.1 because the FAC does not allege

threat, intimidation, or coercion.

The Court acknowledges Rev. Owens's allegation that he was told to sign a document stating

that he would not publicly discuss what was said at the OPACT meeting or otherwise he would be

dismissed from the chaplaincy program.  *See* FAC ¶ 10.  However, this "threat" is not sufficient to

state a claim for § 52.1.  Although physical violence or a threat of physical violence is not required

under the statute (except with respect to speech), *see Cole v. Doe*, 387 F. Supp. 2d 1084, 1103 (N.D.

Cal. 2005) (concluding that use of law enforcement authority to effectuate a stop, detention, and

search can constitute interference by threat, intimidation, or coercion, even if the police did not use

excessive force); Cal. Civ. Code § 52.1(j) (providing in part that "[s]peech alone is not sufficient to

support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech

itself threatens violence against a specific person or group of persons"), the clear purpose of § 52.1

is to protect against *physical* harm and the use of *physical* force.  *See Stamps*, 136 Cal. App. 4th at

United States District Court

For the Northern District of California

1447 (noting that § 52.1 "was intended to supplement the Ralph Civil Rights Act as an additional

legislative effort to deter violence").  There is nothing to indicate in its text or legislative history that

§ 52.1 protects against such purely nonphysical harm as economic sanctions, including dismissal

from employment.

   As a final point, the Court notes that, for the City -- but not Ms. Levine or the other OPACT

board members[6] – there are additional reasons why Plaintiffs have failed to state a claim for relief

under § 52.1.  (As noted above, Plaintiffs have not asserted any § 52.1 claim against Chief Tucker.)

   First, Rev. Emerson and Rev. Owens have failed to present their claims to the City as

required by the CTCA.  *See Taggart v. Solano County*, No. CIV-S-05-0783 DFL GGH, 2005 U.S.

Dist. LEXIS 31799, at *12 (E.D. Cal. Dec. 6, 2005) ("The claim presentation requirement of the

CTCA applies to 'all claims for money and damages.'") (quoting Cal. Gov't Code § 905); *Galvan v.

Yates*, No. CV F 05-0986 AWI LJO, 2006 U.S. Dist. LEXIS 37301, at *24-25 (E.D. Cal. Feb. 8,

2006) ("Although the CTCA exempts certain statutory causes of action from its requirements, claims

under sections 51 and 52 of the California Civil code are not among those statutes exempted.");

*see also Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (2002) ("It may well be, as

appellants say, that many or perhaps even most actions under these statutes [*i.e.*, §§ 52, 52.1] seek

only injunctive or declaratory relief, and not damages, but that provides no reason to exempt such

actions from claim findings requirements where the plaintiff does seek to recover damages from a

public entity and that is his or her chief purpose.") (emphasis omitted).

   Second, Rev. Mayfield's § 52.1 claim for retaliation against the City is barred by the statute

of limitations of the CTCA.  Pursuant to California Government Code § 911.2, "[t]he CTCA

requires a claimant to file a request for damages for injury to personal property with the government

entity not later than six months after the accrual of the cause of action."  *Henson v. Lassen County*,

No. CIV. 05-CV-1099-FCD-KJM, 2006 U.S. Dist. LEXIS 50386, at *51 (E.D. Cal. July 20, 2006).

The City's act of retaliation was dismissal of Rev. Mayfield from the chaplaincy program, and the

---

  [6] It is not clear that Ms. Levine or any other OPACT board member is a public employee who
could be protected by the California Tort Claims Act ("CTCA").  In fact, Ms. Levine and the other
OPACT board members have suggested that they are not public employees.

1   dismissal occurred on February 9, 2006 -- more than six months before he presented his claim to the

2   City on October 20, 2006.

3         Rev. Mayfield tries to make a continuing violations argument to save the § 52.1 claim,

4   noting that the City failed to respond to the complaint that he made on April 25, 2006 with the

5   Internal Affairs of the Police Department.  But the City's failure to respond to that complaint cannot

6   be characterized as part of a continuing course of retaliatory conduct, which would be necessary in

7   order for the continuing violations theory to apply.  Rather, the dismissal of Rev. Mayfield was a

8   discrete act of retaliation.[7]  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1058-59 (2005)

9   (refusing to "foreclos[e] the application of the continuing violation doctrine in a case such as this

10  one, where the plaintiff alleges a retaliatory course of conduct rather than a discrete act of

11  retaliation").

12  D.      Negligence

13        Finally, Plaintiffs assert claims of negligence against Defendants.  More specifically, Rev.

14  Mayfield alleges negligence by all Defendants, while Rev. Emerson and Rev. Owens contend that

15  all Defendants, except for Chief Tucker, acted negligently.

16

17  _____

18        [7] Although the Court agrees with the City that the CTCA bars the § 52.1 claims for the reasons
    stated above, the Court rejects the City's argument that the claims should be dismissed because Plaintiffs
19  have failed to allege a specific enactment that gives rise to a mandatory duty on the part of the City.

20        It is true that, under California Government Code § 815, the City cannot be held liable for an
    injury unless there is a statute allowing for liability.  *See* Cal. Gov't Code § 815 ("Except as otherwise
21  provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an
    act or omission of the public entity or a public employee or any other person.").  It is also true that,
22  under California Government Code § 815.6, a public entity can be held liable for an injury proximately
    caused by its failure to discharge a mandatory duty imposed by an enactment.  *See id.* § 815.6 ("Where
23  a public entity is under a mandatory duty imposed by an enactment that is designed to protect against
    the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately
24  caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable
    diligence to discharge the duty.").

25        However, § 815.6 "is not the only route to entity liability."  *Bradford v. California*, 36 Cal. App.
26  3d 16, 19 (1973).  "Section 815.6 provides a basis of direct entity liability entirely independent of the
    derivative liability created in section 815.2."  *Id.*  Under § 815.2, a public entity such as the City can be
27  held liable for the torts of its employees.  *See* Cal. Gov't Code § 815.2(a) ("A public entity is liable for
    injury proximately caused by an act or omission of an employee of the public entity within the scope
28  of his employment if the act or omission would, apart from this section, have given rise to a cause of
    action against that employee or his personal representative.").

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Defendants argue that the negligence claims should be dismissed because they are too vague

2 to state a claim for relief.  Although only notice pleading is required by Federal Rule of Civil

3 Procedure 8(a), the Court agrees that the negligence claims as pleaded are so lacking in clarity that

4 they fail to satisfy even the bare requirements of notice pleading.  "In order to prevail in an action

5 based upon a defendant's alleged negligence, a plaintiff must demonstrate that the defendant owed

6 the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate

7 or legal cause of his or her injuries."  *Morris v. De La Torre*, 36 Cal. 4th 260, 264 (2005).  Plaintiffs

8 do not provide any specific information in the FAC about any of these elements and instead only

9 state in conclusory terms that, "[d]ue to the actions of Defendants as described above, the tort of

10 negligence was inflicted upon Plaintiffs."  FAC ¶ 18.

11    Furthermore, for the same reasons discussed above, *see* Part II.C, *infra*, the City and Chief

12 Tucker have defenses under the CTCA to any claim of negligence by Rev. Emerson and Rev. Owens

13 (*i.e.*, failure to present) and to Rev. Mayfield's claim of wrongdoing not occurring within the statute

14 of limitations.

15                              **III.    CONCLUSION**

16    For the foregoing reasons, the Court grants Defendants' motion to dismiss.  Plaintiffs have

17 failed to state a claim for relief under § 1983, under the California constitution, under § 52.1, and for

18 negligence.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

United States District Court

For the Northern District of California

1       Although the Court is skeptical of any further attempt to state a claim under § 1983, the state

2   constitution, or § 52.1, given the above public employee speech analysis, it will permit Plaintiffs,

3   should they so choose, to amend their complaint to cure the legal deficiencies discussed above.  The

4   Court will also permit Plaintiffs another opportunity to state more clearly their claim for negligence.

5   Plaintiffs shall be mindful that any new allegations must satisfy Fed. R. Civ. P. 11.  Any amended

6   complaint shall be filed within 30 days of the date of this Order.

7       This order disposes of Docket No. 6.

8

9       IT IS SO ORDERED.

10

11  Dated: August 6, 2007

12                                                      _____
                                                        EDWARD M. CHEN
13                                                      United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REV. CHARLES MAYFIELD, *et al.*,

        Plaintiffs,

      v.

CITY OF OAKLAND, *et al.*,

        Defendants.
_____/

No. C-07-0583 EMC

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California.  On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

James Shum
455 Seventh Street
Oakland, CA 94607

Lena Edmund
455 Seventh Street
Oakland, CA 94607

Malvina Stephens
455 Seventh Street
Oakland, CA 94607

Rufus Robbins
455 Seventh Street
Oakland, CA 94607

Dated:  August 6, 2007

RICHARD W. WIEKING, CLERK
By:    Leni Doyle
       Deputy Clerk